**UNITED STATES DISTRICT COURT**

**EASTERN DISTRICT OF NEW YORK**

| | |
|---|---|
| IN RE: AIG FINANCIAL ADVISOR GROUP SECURITIES LITIGATION | 06-CV-01625(JG)(JMA) |

**MEMORANDUM OF LAW OF IN SUPPORT OF DEFENDANT AMERICAN INTERNATIONAL GROUP, INC.'S MOTION TO DISMISS THE CONSOLIDATED AMENDED CLASS ACTION COMPLAINT**

CAHILL GORDON & REINDEL LLP
80 Pine Street
New York, New York 10005
(212) 701-3000

*Attorneys for Defendants*

Of Counsel:

  Thomas J. Kavaler
  Laura C. Fraher

Defendant American International Group, Inc. ("AIG"), incorrectly identified in the Complaint as "AIG, Inc.", respectfully submits this memorandum of law in support of its Motion to Dismiss the Consolidated Amended Class Action Complaint (the "Complaint"). Rather than provide a full recitation of the relevant facts, AIG respectfully refers the Court to the Memorandum of Law submitted on behalf of Defendants Royal Alliance, Inc., SunAmerica Securities, Inc., FSC Securities Corp., Sentra Securities Corp., Spelman & Co., Inc., Advantage Capital Corp., and AIG Financial Advisors, Inc. (collectively, "the Broker-Dealer Defendants") in support of their Motion to Dismiss the Consolidated Amended Class Action Complaint (the "Broker-Dealer Brief").

Defendant AIG is moving separately to dismiss the putative "control person" claims asserted against it under Section 15 of the 1933 Act[1] and Section 20(a) of the 1934 Act[2] but, to the extent that any claim of "control person" liability necessarily relies upon the existence of a well-pleaded claim of primary liability against the Broker-Dealer Defendants, AIG adopts the arguments set forth in the Broker-Dealer Brief.

## THE FACTS

AIG is a diversified international holding company and is the ultimate, thrice-removed, parent of the Broker-Dealer Defendants. AIG is alleged to have no role here except as the ultimate parent company of the Broker-Dealer Defendants and as the "ultimate beneficiary" of their alleged actions.

---

[1]   15 U.S.C. § 77o.

[2]   15 U.S.C. § 78t(a).

## THE COMPLAINT DOES NOT ADEQUATELY ALLEGE THAT AIG WAS A "CONTROL PERSON" WITHIN THE MEANING OF THE SECURITIES LAWS

The Complaint alleges fraud. Conclusory allegations and innuendo suggesting collusion, illegality, and intentionally false and misleading statements pervade the Complaint. *E.g.*, Complaint ¶ 1 ("unlawful and deceitful course of conduct"); *id.* at ¶ 3 ("abusive and unlawful undisclosed sales practices"); *id.* at ¶ 4 ("clandestine, incentive-driven culture to sell Shelf-Space Funds to the exclusion of other mutual funds, regardless of their clients' best interests"); *id.* ("secret plan and scheme to enjoy the profits improperly generated by the collection of kickbacks from the Shelf-Space Funds"); *id.* at ¶ 6 ("kickback scheme"); *id.* at ¶ 9 ("Defendants' undisclosed incentive arrangements operated as a fraudulent scheme that exploited the misplaced trust of AIG's clients"); *id.* at ¶ 78 ("the public statements issued or disseminated in the name of AIG and the Shelf-Space Funds were materially false and misleading"). These allegations plainly "sound in fraud." *See Rombach* v. *Chang*, 355 F.3d 164, 172 (2d Cir. 2004) ("the wording and imputations of the complaint are classically associated with fraud: that the Registration statement was "inaccurate and misleading;" that it contained "untrue statements of material facts;" and that "materially false and misleading written statements" were issued"). Therefore, the heightened pleading standards of the Private Securities Litigation Reform Act ("PSLRA")[3] and Federal Rule of Civil Procedure 9(b) apply to Plaintiffs' "control person" claims against AIG.[4]

---

[3] 15 U.S.C. § 78u-4(b)(1) (requiring that pleadings of fraud "specify each statement alleged to have been misleading [and] the reason or reasons why the statement is misleading").

[4] "For Section 20 claims . . . since culpable participation is an element, the PSLRA's heightened pleading requirements apply, and plaintiffs must plead with particularity facts giving rise to a strong inference that the controlling person knew or should have known that the primary violator, over whom that person had control, was engaging in fraudulent conduct." *In re Global Crossing, Ltd. Securities Litigation*, 2005 WL 1907005, at *5 (S.D.N.Y. Aug. 8, 2005). Logically, given that all of Plaintiffs' claims of primary liability — including their 1933 Act claims — sound in fraud and thus must meet the heightened pleading standard, the heightened pleading standard also applies to all of Plaintiffs' "control person" claims. *Cf. In re Marsh & McLennan Companies, Inc. Securities Litigation*, 2006 WL 2057194, *36 (S.D.N.Y. July 20, 2006) (dismissing § 15 claims against certain defendants where the plaintiffs' claims sounded in fraud because "the Plaintiffs have not raised a strong inference of scienter for any of the named Section 15 defendants at the time the

Footnote continued on next page.

Plaintiffs make bare, unsupported — and unsupportable — conclusory allegations that AIG "had the power and authority, and exercised the same, to cause the AIG Brokers to engage in the wrongful conduct complained of" in the Complaint (Complaint ¶ 99). This minimalist approach to pleading is insufficient under Rule 8(a) to give AIG notice of the nature of the claims against it and is certainly insufficient to plead any claim against AIG with particularity as required by the PSLRA and Rule 9(b).

Plaintiffs' secondary liability — *i.e.*, "control person" — allegations that AIG violated Section 15 of the 1933 Act and Section 20 of the 1934 Act must be dismissed because Plaintiffs fail to allege that AIG exercised "actual control" or that AIG "culpably participated" in the alleged "fraud" and because, for the reasons stated in the Broker-Dealer Brief, Plaintiffs have failed to state a claim for primary liability against the Broker-Dealer Defendants.[5] In short, Plaintiffs allege no facts upon which a "control person" claim against AIG could be based. Plaintiffs allege that: "At the time that the AIG Brokers sold one or more shares of the Shelf-Space Funds to Plaintiffs and the other members of the Class, by virtue of its position of control and authority over the AIG Brokers, AIG Inc. directly and indirectly, had the power and authority, and exercised the same, to cause the AIG Brokers to engage in the wrongful conduct complained of herein." Complaint ¶ 99. This conclusory and circular style of pleading does no more than say that AIG

---

Footnote continued from previous page.

> relevant registration statement was filed"); *cf. id.* at *5 ("As to control-person liability claims, for Section 15, the heightened pleading standard under Rule 9(b) or the PSLRA does not apply because fraud and scienter are not necessary elements of the claim. Thus, Rule 8 governs the pleading standard for Section 15 claims.") (internal citation and quotation marks omitted)

[5]   Sections 15 and 20(a) differ with respect to the alleged primary violation; the § 15 claims are, in this case, premised on alleged violations of § 12(a)(2), while the § 20(a) claims are premised on alleged violations of § 10(b). However, the same standard applies to § 15 and § 20(a) claims, *In re Marsh & McLennan Companies, Inc. Securities Litigation*, 2006 WL 2057194, at *35 (S.D.N.Y. July 20, 2006) ("Courts in this District routinely examine Section 15 claims under the standard applied to Section 20(a) claims"), so Plaintiffs' claims under those sections are addressed together herein.

...

was a "control person" because AIG was a "control person" and is insufficient to survive a motion to dismiss.

As set forth more fully in Point III of the Broker-Dealer Brief, Plaintiffs only allege that any of them owned a total of *sixteen* funds during the relevant time. Plaintiffs lack standing to sue as to the hundreds of funds they do not even claim to have owned. Plaintiffs who lack standing to assert securities claims under §12(a)(2) of the 1933 Act or § 10(b) of the 1934 Act also lack standing to bring "control person" claims under § 15 of the 1933 Act or § 20(a) of the 1934 Act. *See*, *e.g.*, *Lewis* v. *Casey*, 518 U.S. 343, 357 (1996) ("That a suit may be a class action . . . adds nothing to the question of standing, for even named plaintiffs who represent a class must allege and show that they personally have been injured, not that injury has been suffered by other, unidentified members of the class to which they belong and which they purport to represent") (quotation marks and citations omitted); *MBIA Insurance Corp.*, 2004 WL 1944452, at **1, 6; *In re Eaton Vance Corp. Securities Litigation*, 219 F.R.D. 38, 41 (D. Mass. 2003) ("[b]ecause the plaintiffs cannot demonstrate the requisite case or controversy between themselves personally and [the mutual funds no named plaintiff is alleged to have owned], none may seek relief on behalf of himself or any other member of the class") (internal quotation marks omitted).

"[T]o withstand a motion to dismiss either a § 15 or a § 20(a) claim, plaintiffs must allege: (1) an underlying primary violation by the controlled person; (2) control over the controlled person; and (3) particularized facts as to the controlling person's culpable participation in the fraud perpetrated by the controlled person." *In re AOL Time Warner, Inc. Securities and ERISA Litigation*, 381 F. Supp. 2d 192, 233 (S.D.N.Y. 2004). In order to allege fraud against a parent arising out of conduct of a subsidiary, a complaint must allege the separate and distinct motive of the parent company. *Chill* v. *General Electric Co.*, 101 F.3d 263, 268 (2d Cir. 1996) ("that the [subsidiary] arguably had a motive does not necessarily mean that the parent company … had

any motive. Ultimately, whether [the subsidiary] defrauded plaintiffs and whether its parent … defrauded plaintiffs are different questions.").

Plaintiffs claims under § 15 and § 20(a) fail at the first element. As discussed at length in the Broker-Dealer Brief, Plaintiffs fail to allege any cognizable claim against the Broker-Dealer Defendants. Therefore, because Plaintiffs' primary liability claims against the Broker-Dealer Defendants must be dismissed, Plaintiffs' secondary liability claims against AIG must meet the same fate.

Likewise, Plaintiffs fail to allege facts sufficient to plead actual control by AIG over the Broker-Dealer Defendants. Plaintiffs allege only that AIG held a "100% ownership" interest in the Broker-Dealer Defendants, but Plaintiffs fail to allege any action or involvement by AIG in "the transaction in question". To be liable as a control person, a defendant must possess the actual ability to direct the decisions and actions of the primary violator; some hypothetical power of control is insufficient. *See In re Global Crossing, Ltd. Securities Litigation*, 2005 WL 1875445, at *3 (S.D.N.Y. Aug. 5, 2005); *In re Global Crossing Ltd. Securities Litigation*, 2005 WL 1907005, at *12 (S.D.N.Y. Aug. 8, 2005) (explaining that "plaintiffs must show both that the defendant possessed the power to direct or cause the direction of the management and policies of a person, whether through the ownership of voting securities, by contract, or otherwise, and that defendant had actual control of the transaction in question"). As the ultimate parent, thrice removed, of the Broker-Dealer Defendants AIG simply could not be found, based on the nonexistent allegations in the Complaint, to have been involved in each of the individual businesses of those Defendants to the extent necessary to establish actual control of "the transaction in question."

Plaintiffs similarly fail to allege any "culpable participation" by AIG in the alleged fraud. Pleading culpable participation requires Plaintiffs to "plead with particularity facts giving rise to a strong inference that the controlling person knew or should have known that the primary violator . . . was engaging in fraudulent conduct." *In re Global Crossing*, 2005 WL 2990646, at *8

-5-

(internal quotation marks omitted*); see also In re Deutsche Telekom AG Securities Litigation*, 2002 WL 244597, at *7 (S.D.N.Y. Feb. 20, 2002) (holding that the culpable participation element under § 20(a) requires pleading, "particularized facts of the controlling person's conscious misbehavior as a culpable participant in the fraud," "facts giving rise to a strong inference that the controlling person knew or should have know that the primary violator ... was engaging in fraudulent conduct," and "either conscious misbehavior or recklessness.")  While properly pled allegations of recklessness might be adequate satisfy the pleading requirement for "culpable participation," *In re Marsh & McLennan Companies, Inc. Securities Litigation*, 2006 WL 2057194, **36 (S.D.N.Y. July 20, 2006); *In re Livent, Inc.  Noteholders Securities Litigation*, 151 F. Supp. 2d 371, 417 (S.D.N.Y. 2001), the Complaint contains no allegations whatsoever of  "culpable participation" — let alone recklessness — against AIG.  The Complaint fails adequately to allege any participation by AIG in the alleged fraud, fails adequately to allege that AIG knew or should have known about the alleged fraud, and fails adequately to allege any conscious misbehavior by AIG.  Thus, Plaintiffs utterly fail to allege any "culpable participation" by AIG.

## CONCLUSION

For the foregoing reasons as well as those set forth in the Broker-Dealer Brief, all claims predicated upon the Complaint's "control person" allegations against AIG should be dismissed with prejudice.

Dated:  September 29, 2006

                                                      Respectfully Submitted,

                                                    CAHILL GORDON & REINDEL LLP

                                                    By:   /s/ Thomas J. Kavaler
                                                          Thomas J. Kavaler (TK-8517)
                                                           Laura C. Fraher (LF-1466)
                                                  80 Pine Street
                                                  New York, New York  10005
                                                  Tel: (212) 701-3000
                                                  Fax: (212) 269-5420
                                                  Attorneys for Defendants